NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-390

GUARDIANSHIP OF M.L. (and three consolidated cases[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In September 2023, Hortensia,[2] M.L.'s adult daughter, filed two petitions in the Probate and Family Court.  One petition sought her appointment as M.L.'s general guardian; the other petition sought her appointment as M.L.'s conservator.  In March of 2024, John, M.L.'s adult son, filed a petition, seeking for Maria, M.L.'s spouse, to be appointed as his guardian.  In September of 2024, John and Maria filed a petition seeking to be appointed co-conservators of M.L.  After a trial, a judge allowed both of Hortensia's petitions and dismissed the petition for guardianship filed by John and the petition for conservatorship filed by John and Maria sua sponte after trial.

_____

[1] In the Matter of M.L.; Guardianship of M.L.; In the Matter of M.L.

[2] We use the first names of the respondent's children and spouse to maintain the respondent's confidentiality.

John appeals from the decrees appointing Hortensia as guardian and conservator, and from the decrees dismissing his petition and his petition with Maria.[3]  The appeals were consolidated. Among other arguments, John contends that Hortensia is not suitable for appointment as guardian and conservator over M.L. We affirm.

Background.  We summarize the record, drawing on the judge's findings in support of the decrees, and supplementing them with undisputed evidence in the record.  See Pierce v. Pierce, 455 Mass. 286, 288 (2009).  M.L., the respondent, is an eighty-five year old man diagnosed with progressive dementia, type 2 diabetes, high blood pressure, and high cholesterol.[4] M.L. and Maria own a single-family home and two rental properties in Fall River.  John, who has a diagnosis of schizophrenia, has resided with M.L. and Maria in Fall River throughout his lifetime.[5]  Hortensia is a registered nurse who works at a local hospital in Fall River and resides in Westport with her husband and children.

---

[3] M.L. was represented by appointed counsel.  Through counsel, M.L. supported Hortensia being appointed his permanent guardian and conservator.

[4] At the time of the trial, the respondent was eighty-three years old.

[5] John was hospitalized involuntarily from December 28, 2023, to January 18, 2024.

When M.L.'s dementia progressed he was given a CAT scan and seen by a neurologist. Hortensia asked John to take M.L. to follow up with the neurologist. John failed to do so. In the months before Hortensia filed her petitions, she discovered that John had not overseen M.L.'s medical care, had failed to take M.L. to his medical appointments, had discontinued M.L.'s prescription medications, and had put M.L. on a vegan diet, causing him significant weight loss. Hortensia also discovered that M.L. eloped from the home. In September 2023, M.L. was hospitalized with "severe memory and cognitive functioning deficits" and elder services became involved.

In response to Hortensia's two petitions, John and Maria filed notices of appearance and objections.[6,7] On March 6, 2024, John filed a petition seeking that Maria be appointed as guardian, and on September 9, 2024, he and Maria filed a petition that they be appointed as M.L.'s co-conservators.[8] The petitions filed by John and Maria averred that M.L. was

---

[6] The notices of appearance and objections were not included in the record.

[7] Hortensia was appointed as temporary guardian and conservator on November 6, 2023. Her appointments were extended at review hearings on February 7, 2024, February 14, 2024, February 22, 2024, May 1, 2024, May 29, 2024, and August 28, 2024, and after trial on November 1, 2024.

[8] John moved to amend his petition for guardianship to seek co-guardianship.

3

incapacitated and relied on the medical certificates filed with the petitions advanced by Hortensia.

On November 1, 2024, the judge held a trial on the consolidated petitions for guardianship and conservatorship. Maria did not appear at the trial. Six exhibits were entered in evidence, to wit, three medical certificates, the petitions filed by John and Maria, and a June 24, 2023 correspondence, authored by John, informing M.L.'s medical insurance provider that M.L. was no longer taking his prescription medication and had no future medical appointments scheduled. The only witnesses were Hortensia and John. M.L.'s attendance was waived. In his extensive posttrial findings of fact, the judge found Hortensia to be "a devoted and caring daughter and a suitable and appropriate caretaker for [M.L.]" On December 6, 2024, the judge signed the decrees and orders determining M.L. to be an incapacitated person and appointing Hortensia as his sole general guardian and conservator.[9]

Discussion. John argues, at bottom, that the judge erred by appointing Hortensia because she was not qualified to be M.L.'s guardian and conservator. John also contends that Maria, as M.L.'s spouse, has priority of appointment, or, in the alternative, he, as a beneficiary in his parents' real estate

---

[9] The judge dismissed the petitions filed by John and Maria on the same date.

4

trust, has priority of appointment.  See generally G. L. c. 190B, §§ 5-305, 5-306, 5-309.  We conclude that all of John's arguments are unavailing.

"Any qualified person may be appointed guardian of an incapacitated person."  G. L. c. 190B, § 5-305 (a).  A spouse is given priority of appointment, if suitable.  See G. L. c. 190B, § 5-305 (c) (1).  Further, "[t]he court, acting in the best interest of the incapacitated person, may pass over a person having priority and appoint a person having a lower priority or no priority."  G. L. c. 190B, § 5-305 (d).  In exercising their discretion in determining suitability, the judge should give careful consideration to the needs of the respondent and "to the experience or other qualifications of the applicant to react sensitively and positively to the [respondent's] needs."  Uniform Probate Code prior § 5-305 comment, 8 U.L.A. (Part III) 616 (Master ed. 2023).

Here, there is nothing in the appellate record showing that the judge abused his discretion in determining that Hortensia was a suitable guardian and conservator.  The judge found that John failed to take M.L. to his medical appointments, including a neurology appointment, causing M.L. to not see a doctor for several years.  John's letter to M.L.'s medical insurance provider documents that John took M.L. off his prescription medications, intentionally did not schedule M.L. for

appointments with his physicians, and changed M.L.'s diet to be "more vegetarian." These changes resulted in M.L.'s weight loss to only 105 pounds. Once Hortensia was appointed as guardian, M.L. received prepared meals from her family and "meals on wheels," gained weight, and resumed his prescription medication regimen. The judge found that while living with John and Maria, M.L. would leave the home for hours at a time without supervision and on one occasion was found a mile away from his home. In response to these wanderings, neither John nor Maria installed alarms or safety devices. Rather, John dressed M.L. in thermal clothing in case he eloped during the nighttime. When Hortensia scheduled a home health aide to care for M.L. pursuant to the suggestion of elder services, John interfered and would not permit the aide to provide services. In contrast, under Hortensia's guardianship, M.L. lives with her and her family and attends adult daycare. The judge found that when John was assisting M.L. with financial affairs, and before Hortensia was M.L.'s conservator, a tenant at M.L.'s rental property did not pay rent for six months, insurance premiums were fifty percent too high, and water damage went unaddressed. The judge also found that John frustrated Hortensia's temporary guardianship, temporary conservatorship, and M.L.'s medical care by cancelling medical appointments that Hortensia scheduled, refusing to provide M.L.'s passport to Hortensia, cancelling

6

M.L.'s prescriptions at the pharmacy, and by refusing access to the home for a home insurance inspection. The judge's exhaustive findings carefully weighed M.L.'s needs as a person with progressive dementia, as amply supported by a medical certificate entered in evidence at trial, and determined which applicant would best meet them.[10] See Guardianship of B.V.G., 474 Mass. 315, 321 (2016) ("A guardianship proceeding is designed to effectuate the best interests of the incapacitated person"). There was no error.

John also contends that Maria has priority of appointment because she is the spouse of M.L. We disagree. First, Maria's objection to Hortensia's petition for guardianship was not included in the record and therefore cannot be evaluated by this panel. Moreover, Maria neither filed a petition seeking her own appointment nor filed an assent to John's petition. Finally, Maria did not appear at trial. As a result, her position was not known to the judge, and the judge had no opportunity to assess her suitability as required by the statute.[11] G. L. c. 190B, § 5-305 (c) (1). John's argument that he has priority

_____

[10] A guardian ad litem, appointed to investigate M.L.'s best interests, reported that M.L. was "being well cared for by Hortensia," and that M.L.'s "income and assets [were] being appropriately expended and used for his benefit."

[11] While Maria did not testify, John testified that Maria is diagnosed with schizophrenia.

7

of appointment because his parents named him as one of two beneficiaries of their real estate trust also fails. Neither the trust nor the schedule of beneficiaries was entered in evidence at trial. Even assuming, arguendo, that the judge considered John's testimony regarding the trust, the trust instrument is not a nomination of guardian as contemplated under G. L. c. 190B, § 5-301 (b).[12]

Decrees appointing Hortencia as guardian and conservator in docket nos. BR23P2314GD and BR23P2313PM affirmed.

Decrees of dismissal dated December 6, 2024, in docket nos. BR24P0780GD and BR24P2228PM affirmed.

By the Court (Meade, Hodgens & Allen, JJ.[13]),

Paul Little

Clerk

Entered:  July 17, 2026.

---

[12] The balance of John's claims do not rise to the level of appellate argument and are waived. Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

[13] The panelists are listed in order of seniority.